0I093 - X55 Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 Oct 20 12:20 PM-26CV009774

**Thursday, October 15, 2026**

**IN THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO**

**GENERAL DIVISION**

**SHAKEERA SANDERS,**

*individually, and as Next Friend of her*

*minor child, K.B,*

Plaintiff,

7461 Crowner dr Apt A0409 Dimondale MI 48821-5003

v.

**COLUMBUS METROPOLITAN HOUSING AUTHORITY, 880 E11 th Ave Columbus OH 43211,**

**CHARLES HILLMAN, President & CEO of CMHA, 880 E 11th Ave Columbus OH 43211,**

**CMHA HOUSING CASE MANAGER, Christian Porter, 880 E 11th Ave Columbus OH 43211,**

**CMHA PORTABILITY CASE MANAGER, Laticia Phinisee, 880 E 11th Ave Columbus OH 43211,**

**CMHA PORTABILITY CASE MANAGER, Roslyn Nevel, 880 E 11th Ave Columbus OH 43211**

**CMHA PORTABILITY SUPERVISOR, Shari Hoosier,880 E 11th Ave Columbus OH 43211,**

**CMHA LEGAL COUNSEL, JEFFERY LOOKABAUGH, 880 E 11th Ave Columbus OH 43211,**

**ERIC ORTIZ, CMHA HEARING OFFICER, COLUMBUS OH 43211,**

**YOUNG MEN'S CHRISTIAN ASSOCIATION OF CENTRAL OHIO, 40 W Long st Columbus OH 43215,**

**TONY COLLINS, President & CEO of YMCA, 40 W Long st Columbus OH 43215,**

**NEXUS CHAPMAN, YMCA Program Director, 40 W Long st Columbus OH 43215,**

EXHIBIT
A

**JASMINE SOLOMON, YMCA Case Manager, 40 W Long st Columbus OH 43215,**

**MAKAYLA MEACHEM, YMCA Team Lead, 40 W Long St Columbus OH 43215,**

**LORI COREY, YMCA Clinical Director, 40 W Long st Columbus OH 43215**

**COMMUNITY SHELTER BOARD, 355 campus view Blvd ,suite 250 Columbus OH 43235, and**

**COURTNEY WHITE, CSB HOUSING SYSTEM PROGRAM MANAGER, 355 Campus View Blvd suite 250 Columbus OH 43235,**

Defendants.

**CASE NO.:** ______________________

**JUDGE:** ______________________

**VERIFIED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF: CIVIL LIABILITY FOR CRIMINAL ACTS (O.R.C. § 2307.60), RETALIATION, IDENTITY FRAUD, DEFAMATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, FORGERY, HARASSMENT, BREACH OF FIDUCIARY DUTY, TORTIOUS INTERFERENCE, AND BLOCKING OF DUE PROCESS**

**ORAL ARGUMENT AND REMOTE/VIRTUAL HEARINGS REQUESTED PURSUANT TO FRANKLIN COUNTY COMMON PLEAS LOCAL RULE 21 DUE TO OUT OF STATE RESIDENCY AND EMERGENCY VAWA PROTECTION STATUS**

Plaintiff Shakeera Sanders, proceeding Pro Se hereby files this Complaint against the above-named Defendants, and respectfully states as follows:

## JURISDICTION AND VENUE

1 This Court has subject matter jurisdiction over this civil action pursuant to Ohio Revised Code § 2305.01, as the amount in controversy presents actionable violations of constitutional, statutory, and common law [2305.01].

2 Plaintiff's claims are brought pursuant to the following statutory authorities:

- **42 U.S.C. § 1983** (Civil Rights Act of 1871 - Deprivation of Constitutional Rights under Color of State Law, including First Amendment Retaliation and Fourteenth Amendment Due Process violations);

- **42 U.S.C. § 1985(3)** (Conspiracy to Interfere with Civil Rights);
- **42 U.S.C. § 3601 et seq.** (The Fair Housing Act including Retaliation and Interference under 42 U.S.C. § 3617);
- **34 U.S.C. § 12491 and 34 U.S.C. § 12494** (The Violence Against Women Act - Housing Protections, Emergency Transfer Mandates, and Statutory Anti-Retaliation protections);
- **42 U.S.C. § 12131 et seq.** (Title II of the Americans with Disabilities Act) and **29 U.S.C. § 794** (Section 504 of the Rehabilitation Act of 1973 - regarding indifference to medical/disability needs and mold exposure); and,
- **Ohio Revised Code Section 2923.34** (Ohio Pattern of Corrupt Activities Act - Civil Recovery for a pattern of racketeering activity predicated on Forgery, Identity Fraud, or Voucher Fraud via the diversion of federal housing documents and data networks to private workplace accounts).

3 This Court has jurisdiction over Plaintiff's state law claims because they arise out of the exact same operative facts, occurrences, and transactions. Plaintiff's state law claims are brought pursuant to the following authorities:

- **Ohio Revised Code § 2307.60** (Civil Recovery for Criminal Acts, enabling civil damages for criminal Forgery under R.C. 2913.31, Identity Fraud under R.C. 2913.49, Telecommunications Fraud under R.C. 2913.05, Tampering with Records under R.C. 2913.42, and Criminal Menacing/Harassment under R.C. 2903.21 and R.C. 2917.21) [2307.60];
- Ohio Common Law governing Tortious Interference with Contractual and Business Relations;
- Ohio Common Law governing Breach of Fiduciary Duty and Negligence;
- Ohio Common Law governing Defamation Per Se; and
- Ohio Common Law governing Intentional Infliction of Emotional Distress (IIED) and Invasion of Privacy (Intrusion Upon Seclusion).

4 Venue is proper in the Court of Common Pleas of Franklin County, Ohio, pursuant to Ohio Civil Rule 3(B)(1)-(3), because all Defendants reside or operate within this judicial district, and a substantial part of the events, acts, omissions, and systemic fraud giving rise to these claims occurred in Franklin County, Ohio.

## STATEMENT OF FACTS

5 Plaintiff Shakeera Sanders is a certified housing client holding protected Violence Against Women Act (VAWA) status. K.B. is her minor child who suffers from documented

chronic asthma and allergies to mold.

6 For over nine months, Defendant Jasmine Solomon (YMCA Case Manager) and Defendant Nexus Chapman (YMCA Program Director) subjected Plaintiff to housing conditions contaminated with toxic mold. This environment caused Plaintiff to suffer emotional distress as she observed her minor child, K.B., experience documented, life threatening breathing crises.

7 Defendants maintained this placement despite receiving multiple citations from Columbus Code Enforcement and explicit written documentation from two independent physicians stating that the toxic mold environment was endangering the physical health of Plaintiff's family and exacerbating her child's chronic asthma. *(See code enforcement reports, attached hereto as Exhibit A)*. Defendants' refusal to remediate these conditions inflicted trauma upon Plaintiff, forcing her to escalate her complaints to external oversight agencies. *(See medical logs, attached hereto as Exhibit B)*.

8 Defendant Nexus Chapman refused to relocate Plaintiff's family, refused to reassign her case to a new manager, and ignored written inquiries from Plaintiff questioning why a mental health Certificate of Disability was being requested when Plaintiff is not disabled. *(See Written Denial of Relocation and Inquiries, attached hereto as Exhibit B)*.

9 Plaintiff escalated reports of this medical endangerment and staff misconduct to Team Lead Makayla Meachem, explicitly requesting a new case manager due to open safety and mold violations. *(See Email Thread, attached hereto as Exhibit C)*.Team Lead Meachem did not intervene, declined to assign a new case manager, and stated a new housing voucher would be available to the plaintiff soon.

10 In response to these complaints, calls to code enforcement and to further a Prevention, Retention, and Contingency (PRC) financial funding scheme with Plaintiff's landlord, Defendant Jasmine Solomon utilized Plaintiff's identity to open an unauthorized CMHA Mainstream Housing Voucher application. *(See Fraudulent Application, attached hereto as Exhibit E)*.

11 To process this application through the housing system, the YMCA Clinical Director Lori Corey signed Plaintiff's name electronically on a federal Medical Certificate of Disability without authorization. *(See Forged COD and Admissions, attached hereto as Exhibit D)*.

12 The application and voucher requirements were routed from Christian Porter (CMHA) directly to Jasmine Solomon's work email, her physical workplace, and a Community Shelter Board (CSB) housing system program manager, Courtney White. *(See Exhibit E)*.

13 Defendant CMHA bypassed standard identity verification protocols, accepted the electronic signatures, and permitted the federal voucher data to be redirected to third-

party employee accounts.

14 Had Defendant CMHA exercised administrative due diligence and verified Plaintiff's identity according to mandatory federal guidelines, the underlying identity theft and forgery would have been identified. CMHA's failure to execute these verification safeguards enabled the application to be finalized, which resulted in Plaintiff being terminated from her active Rapid Rehousing program assistance.

15 On or about December 11th, 2025 the voucher framework was secured. On January 12, 2026, Defendants Jasmine Solomon and Nexus Chapman terminated Plaintiff from the Rapid Rehousing program, removing her protected housing status, while placing documents in the plaintiff's casefile stating she completed the rapid rehousing program successfully. *(See Rapid Rehousing Exit Letter and Notes, attached hereto as Exhibit F)*.

16 Upon discovering that a Mainstream Housing Voucher application had been opened in her name via internal data manipulation, Plaintiff reported the matter. In May 2026, Plaintiff filed formal fraud and identity theft reports with the Federal Bureau of Investigation (FBI), Columbus City Police Department (CPD), The Ohio Attorney General's Office, the HUD Office of Inspector General (OIG), and Columbus Metropolitan Housing Authority (CMHA) executive leadership (Anthony Forte), putting all entities on actual notice of the operational issues.

17 Following these reports, HUD federal oversight personnel reviewed the file and instructed Plaintiff in June 2026 to execute an out-of-state portability transfer to Michigan to protect her family's immediate safety. Furthermore, Plaintiff disclosed the ongoing identity fraud investigation to the Michigan State Housing Development Authority (MSHDA) in June 2026, prior to MSHDA signing off on, processing, or accepting her transfer. Both CMHA and MSHDA possessed actual knowledge of the mainstream application since June 2026, yet approved and finalized Plaintiff's interstate transfer and lease execution.

18 Following the approval of an out-of-state portability transfer under VAWA protections, the CMHA portability Case Managers Roslyn Nevel and Laticia Phinisee reduced Plaintiff's voucher search window from its original approved timeline of June 2 to September 4, cutting it off on July 22.

19 Because Plaintiff's out-of-state portability transfer was not formally accepted by the receiving agency until June 24, CMHA's adjustment left Plaintiff with a 28-day window to execute an interstate move, while declining to provide her with an emergency plan required by law under her VAWA status.

20 When Plaintiff demanded that the CMHA Case Manager Roslyn Nevel provide the HUD regulatory guideline authorizing a 28-day expiration, the Case Manager stated it was a penalty for a previously withdrawn port-out request. When asked to show the rule in writing, the Case Manager declined and transferred Plaintiff to a supervisor.

21 Upon discovering that CMHA had transmitted these voucher expiration dates to the Michigan State Housing Development Authority (MSHDA) in June 2026, Plaintiff requested an informal hearing with CMHA to correct the record and protect her portability status. CMHA staff denied this request via email, stating, *"per HUD regulations portability does not have an appeal process." (See Portability Worker Emails, attached hereto as Exhibit G)*.

22 Plaintiff responded and clarified that she was not seeking an appellate review, but rather her administrative hearing to contest the dates. CMHA staff declined to schedule the hearing and instructed Plaintiff to contact a supervisor. Plaintiff contacted the designated supervisor, who did not reply, leaving the dates active on MSHDA's tracking system.

23 The CMHA Supervisor Shari Hoosier did not adjust the date and declined to provide an administrative explanation as to why her search time was reduced, ratifying the actions of the subordinate. *(See Exhibit G)*.

24 Plaintiff filed a report with HUD. Following this intervention, the receiving out-of-state porting agency reviewed the file, determined that CMHA's 28-day timeline was incorrect, and corrected and restored Plaintiff's housing dates.

25 The data and funding actions executed by Defendants involve the diversion of federal program resources as outlined under 18 U.S. Code § 666.

26 Plaintiff sent explicit email notices directly to the executive leadership of the YMCA (CEO Tony Collins) and CMHA (CEO Charles Hillman), giving them actual notice of the fraud, forgery, mold exposure, and retaliation. Both leaders did not take corrective action, thereby ratifying the conduct.

27 Defendant CMHA and its executive leadership received this notice, possessed knowledge of the actions of their subordinates, and permitted the August 31, 2026, 5:00 PM deadline to expire without intervening.

28 By declining to intervene, investigate, or provide administrative relief, Defendant CMHA ratified the conduct, causing Plaintiffs to suffer financial injury, housing insecurity, and threats to their physical safety.

29 On August 12, 2026, Plaintiff initiated a formal Public Records Request for internal CMHA records, data logs, and employee communications to secure evidence regarding the system data.

30 On the morning of September 2, 2026, Plaintiff served a formal meet and confer to opposing counsel regarding evidence proving agency collusion discovered within those records for a separate, ongoing legal matter.

31 Following receipt of Plaintiff's meet and confer , CMHA's legal counsel issued an email regarding public records access, stating: "CMHA's HCV contact information can be

found at the link below. Your request is not complete at this time... Please refer to the letter previously provided... The information you are requesting is not available through public record." *(See September 2 Legal Counsel Correspondence, attached hereto as Exhibit H)*.

32 Within a few hours CMHA leadership contacted MSHDA's private contracted housing agent, Community Management Associates, Inc. (CMA), stating Plaintiff's voucher was rescinded due to fraud.

33 Approximately four hours after CMHA's email and phone call to CMA, a formal Third Party Subpoena was served to compel the disclosure of CMHA's data logs.

34 Defendant CMHA generated these fraud claims and contacted the Michigan contractor prior to the subpoena arriving to adjust the federal housing tracking, terminate the housing tracking, and alter the status of a protected VAWA survivor utilizing legal discovery.

35 Following CMHA's communication, the CMA caseworker assisted CMHA in this disruption and contacted Plaintiff's landlord, placing Plaintiff and her minor children at risk of eviction and homelessness. (See exhibit I2)

36 Defendants' actions to adjust voucher search windows, assert claims of fraud, and rescind Plaintiff's housing assistance violate the anti-retaliation and anti-interference mandates of the Fair Housing Act (42 U.S.C. § 3617) and the Violence Against Women Act (42 U.S.C. § 14043e-11 / 34 U.S.C. § 12494).

37 Following this sequence, Defendant CMHA conducted an informal hearing on September 21, 2026. Prior to this hearing, Plaintiff submitted written demands for her client file, which were not fulfilled by the agency. At the hearing, the Hearing Officer relied on an unnotified evidence packet via a live screen share and denied Plaintiff's pre-hearing file discovery requests in violation of HUD regulation **24 CFR § 982.555(e)(2)(i)**. *(See Casefile Demand Records, attached hereto as Exhibit I)*.

38 The Hearing Officer subsequently entered a timeline within the written "Procedural History" portion of the formal *Notification of Program Informal Hearing Decision*, stating Plaintiff was informed of the action on September 8 and filed for a hearing that same day.

39 This timeline is inconsistent with email records showing Plaintiff was already addressing the dispute on September 2. The procedural history obscures the fact that CMHA had contacted Plaintiff's housing agent and landlord on September 2, prior to rendering a final written decision.(see exhibit H3)

40 Plaintiff previously granted out of court courtesy extensions to Defendant YMCA (until September 11, 2026) and Defendant Community Shelter Board (until September 14, 2026) to allow for administrative resolution.

41 Because the defendants operate within an intertwined network, and because the sudden cross state adjustments created an emergency threatening the physical safety and housing security of a protected VAWA survivor, Plaintiff has revoked all out of court extensions. Immediate judicial intervention under Civ.R. 65 is required to prevent irreparable harm.

**CAUSES OF ACTION**

**COUNT I: First Amendment Retaliation and Federal Housing Violations via 42 U.S.C. § 1983**

*(Against Defendants CMHA, Charles Hillman, Christian Porter, Laticia Phinisee, Roslyn Nevel, and Shari Hoosier)*

42 Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully rewritten herein.

43 Plaintiff engaged in protected activity by reporting voucher fraud, identity theft, and physical safety hazards to HUD, the FBI, and executive leadership.

44 In response to this speech, Defendant CMHA and its staff subjected Plaintiff to an adverse administrative campaign, including failing housing inspections, adjusting voucher expiration dates to a 28-day window, and blocking an out-of-state portability transfer under the Violence Against Women Act (VAWA). The Hearing Officer's entry of the notification dates within the final written decision violates Plaintiff's Fourteenth Amendment Due Process rights, executing a premature deprivation of a federal housing entitlement.

45 On August 26, 2026, Plaintiff attempted to resolve these constitutional and statutory matters in good faith by serving a formal written notice directly to CMHA executive leadership and legal counsel.

**COUNT II: Civil Liability for Forgery, Defamation, and Child Endangerment via O.R.C. § 2307.60**

*(Against Defendants YMCA of Central Ohio, Tony Collins, Nexus Chapman, Jasmine Solomon, Makayla Meachem, and Lori Corey)*

46 Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully rewritten herein.

47 Defendants owed a duty of care to ensure that the funded residential environment provided to Plaintiff and her minor child, K.B., complied with health codes.

48 Defendants breached this duty by maintaining Plaintiffs in toxic mold for over a year, ignoring code citations and warnings from two physicians, which resulted in physical trauma and emergency breathing crises for Plaintiff's minor son.

49 Defendant Jasmine Solomon, Defendant Nexus Chapman, and YMCA Clinical Director Lori Corey engaged in record tampering (O.R.C. § 2913.42) and forgery (O.R.C. § 2913.31) by generating a federal Medical Certificate of Disability, signing Plaintiff's name without authorization, and submitting the document to CMHA to alter her federal file.

50 Defendant YMCA and CEO Tony Collins received notice, possessed knowledge of the forgery, fraud, and medical danger to Plaintiff, and did not execute corrective measures.

51 Pursuant to Ohio Revised Code § 2307.60, Plaintiff is entitled to civil recovery of compensatory and punitive damages for the injuries sustained as a result of these criminal acts [2307.60].

**COUNT II(A): Civil Liability for Criminal Forgery via O.R.C. § 2307.60**

*(Against Defendants Jasmine Solomon, Lori Corey, and YMCA of Central Ohio)*

52 Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully rewritten herein.

53 Pursuant to Ohio Revised Code § 2913.31, it is a criminal offense to forge any writing or execute an unauthorized signature with the purpose to defraud or facilitate a fraud.

54 Defendants Jasmine Solomon, Lori Corey, and agents of the YMCA committed forgery by generating a federal Medical Certificate of Disability, signing Plaintiff's electronic signature without authorization, and submitting the document to CMHA to alter her housing file.

55 Pursuant to Ohio Revised Code § 2307.60, an individual injured by a criminal act may recover civil damages in a civil action. As a result of Defendants' actions, Plaintiff suffered financial injury, emotional distress, and the disruption of her housing status [2307.60].

**COUNT IV: Vicarious Liability and Respondeat Superior**

*(Against Defendant YMCA of Central Ohio and Defendant Tony Collins)*

56 Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully rewritten herein.

57 At all times relevant to this action, Defendants Jasmine Solomon, Nexus Chapman, Makayla Meachem, and Lori Corey were employees, agents, or representatives of Defendant YMCA of Central Ohio, acting within the course, scope, and duties of their employment.

58 Under the doctrine of respondeat superior and agency principles, a corporate employer is liable for the tortious acts, negligence, civil rights violations, fraud, and statutory breaches committed by its employees while performing their operational roles.

59 Defendant YMCA of Central Ohio and CEO Tony Collins held supervisory authority over these employees, possessed knowledge of the mold exposure and identity actions through Plaintiff's direct emails, and ratified the conduct by omitting corrective action.

60 As a result of the actions of the YMCA's agents, Defendant YMCA of Central Ohio holds joint corporate liability for the injuries, physical trauma, and civil rights deprivations inflicted upon Plaintiffs.

**COUNT V: Vicarious Liability and Agency Action under Color of State Law**

*(Against Defendant Columbus Metropolitan Housing Authority and Defendant Charles Hillman)*

61 Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully rewritten herein.

62 At all times relevant to this action, the named CMHA Case Managers and Supervisors were employees, housing specialists, and designated operational agents of Defendant Columbus Metropolitan Housing Authority (CMHA), acting under color of state law and within the scope of their employment.

63 A public housing authority holds liability for the operational actions, retaliation, and indifference executed by its staff members while performing their official duties in administering federal voucher programs.

64 Defendant CMHA and CEO Charles Hillman were provided written notice via email communications detailing the document routing, inspections, and the 28-day VAWA portability timeline adjustments.

65 By permitting the demand deadline to expire and omitting corrective action, Defendant CMHA's executive leadership ratified the conduct of their subordinates, establishing municipal and corporate liability.

**COUNT VI: Intentional Infliction of Emotional Distress (IIED)**

*(Against All Defendants)*

66 Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully rewritten herein.

67 Defendants acted intentionally or recklessly when they maintained Plaintiff's minor child in documented toxic mold, generated medical disability records without authorization, and crossed state lines via telecommunications to adjust Plaintiff's housing tracking.

68 Defendants' conduct was of an extreme nature, going beyond standard bounds of decency, and is unacceptable in a civilized community.

69 As a result of Defendants' conduct, Plaintiff and her minor child suffered physical crises, mental anguish, trauma, and anxiety, establishing liability for compensatory and punitive damages.

**COUNT VII: Tortious Interference with Contractual/Business Relations**

*(Against Defendants CMHA and Charles Hillman)*

70 Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully rewritten herein.

71 Plaintiff possessed a valid, approved interstate housing portability transfer and an executed lease contract for a residence.

72 Defendant CMHA possessed knowledge of this contract, yet crossed state lines via telecommunications to communicate claims of fraud to an out-of-state housing administrator for the purpose of inducing a termination of Plaintiff's lease.

73 As a result of Defendant's interference, Plaintiff's contract was disrupted, placing her at risk of eviction and financial injury.

**COUNT VIII: Breach of Fiduciary Duty and Negligence**

*(Against Defendants YMCA of Central Ohio, Community Shelter Board, and CMHA)*

74 Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully rewritten herein.

75 Defendants, by virtue of administering federally funded protected status housing assistance programs tailored for vulnerable families under safety mandates, owed a specialized duty of care and administrative fidelity to Plaintiff.

76 Defendants breached this duty by demonstrating indifference to open code enforcement violations, leaving a minor child in toxic mold danger, failing to protect electronic voucher data records from staff exploitation, and omitting action upon administrative alerts of operational issues.

77 As a result of Defendants' negligence and breach of fiduciary duties, Plaintiff's family suffered disruption to their physical health, safety, and stable housing entitlements.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Shakeera Sanders respectfully requests that this Court enter judgment in her favor and against all Defendants, granting the following relief:

1 **Compensatory Damages** against all named Defendants, jointly and severally, in an amount to be determined at trial, to compensate Plaintiffs for physical injuries to a minor child, emotional distress, financial loss, and the deprivation of federal housing benefits;

2 **Punitive Damages** against Defendant YMCA of Central Ohio, Defendant Community Shelter Board, Defendant Courtney White, Defendant Tony Collins, Defendant CMHA, and all individual defendants, in an amount to be determined at trial, for their conduct;

3 An Order entering a **Preliminary and Permanent Injunction** ordering Defendant CMHA to freeze its withdrawal action, restore Plaintiff's Mainstream Voucher tracking, and resume interstate portability billing payments to secure Plaintiff's residential lease;

4 An award of litigation costs and civil recovery permitted under **O.R.C. § 2307.60**[2307.60];

5 An Order allowing all initial conferences, oral arguments, and evidentiary hearings to be conducted **remotely via Zoom or teleconference pursuant to Franklin County Common Pleas Local Rule 21** due to Plaintiff's out-of-state residency and protected federal VAWA status; and

6 Such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**/s/ Shakeera Sanders, Plaintiff Pro Se**

0I093 - X67 Franklin County Ohio Clerk of Courts of the Common Pleas- 2026 Oct 20 12:20 PM-26CV009774

7461 Crowner DR Apt A0409

Dimondale, MI 48821-5003

614-254-0344

**VERIFICATION STATEMENT**

I, Shakeera Sanders, declare under penalty of perjury under the laws of the State of Ohio and the United States of America that I am the Plaintiff in the above-captioned matter, that I have read the foregoing Verified Complaint, and that the facts and statements contained therein are true, accurate, and correct to the best of my knowledge, information, and belief.

**/s/ Shakeera Sanders, Plaintiff Pro Se**