**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Shakeera Sanders, et al.,** | : | |
| | : | **Case No. 2:26-cv-01534** |
| **Plaintiffs,** | : | |
| **v.** | : | **Judge Graham** |
| | : | |
| **Columbus Metropolitan Housing Authority, et al.,** | : | **Magistrate Judge Vascura** |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court upon the motion of Plaintiff Shakeera Sanders ("Plaintiff") for emergency injunctive relief. Doc. 4. Specifically, Plaintiff seeks a temporary restraining order ("TRO") enjoining Defendant Columbus Metropolitan Housing Authority ("CMHA") from rescinding her Mainstream Housing Choice Voucher. For the reasons explained below, the Court **DENIES** Plaintiff's motion.

**Background**

The relevant facts are not in dispute. In December 2025, Plaintiff was approved for a Mainstream Housing Choice Voucher ("Mainstream Voucher"), which is a form of federally funded housing assistance reserved specifically for adults with disabilities. Plaintiff, however, is not disabled. Though CMHA had approved Plaintiff for the Mainstream Voucher based on a Certificate of Disability ("COD") which represented that she was disabled, Plaintiff contends that the COD was forged by Defendant Lori Corey, Clinical Director at YMCA.

In May of this year, Plaintiff discovered "that a Mainstream Housing Voucher application had been opened in her name via internal data manipulation." Doc. 3, # 36. She reported this to various authorities, including CMHA, maintaining that she is not, was not, and has never been disabled. A CMHA employee responded the following day, indicating they would review the case and follow up after investigation.

After reporting this issue, Plaintiff contends that "HUD federal oversight personnel reviewed the file and instructed Plaintiff in June 2026 to execute an out-of-state portability transfer to Michigan to protect her family's immediate safety."[1] *Id.* Despite having notified CMHA of her lack of disability (and thus her ineligibility for the Mainstream Voucher she was currently exercising), CMHA approved the portability transfer to the Michigan State Housing Development Authority ("MSHDA"). Plaintiff also notified MSHDA of the Mainstream Voucher issue before MSHDA approved/accepted the transfer.

On August 20, counsel for CMHA contacted Plaintiff requesting confirmation that she was disabled at the time she applied for the Mainstream Voucher. In response sent the same day, Plaintiff again reiterated that she was not disabled, and that the application was submitted fraudulently. Based on Plaintiff's admission that

[1] The structure of the Complaint suggests that this "instruct[ion]" was connected to or somehow arose from Plaintiff reporting to authorities that she was not in fact disabled, but the Court discerns no apparent connection between Plaintiff's report and "her family's immediate safety." Doc. 3, # 36. The actual impetus for Plaintiff's relocation to Michigan is unclear. She refers to her status as a survivor of domestic violence with protections under the Violence Against Women Act ("VAWA"), stating that the portability transfer was approved "under VAWA protections." *Id.* She also refers to mold and other deleterious living while living in Columbus, which she describes as causing her minor child to have "documented, life threatening breathing crises." *Id.* at # 35.

she was categorically ineligible for a Mainstream Voucher, Defendant Jeffery Lookabaugh, corporate counsel for CMHA, wrote to MSHDA to notify them that "[CMHA] has determined that it must rescind the voucher of [Plaintiff]… effective immediately." Doc. 9-1, # 68.

On September 8, CMHA notified Plaintiff that her Mainstream Voucher was being rescinded and that she would be placed back in her prior position on the Housing Choice Voucher general waiting list. Plaintiff requested an informal hearing, which was held on September 21. Defendant Eric Ortiz, the hearing officer, issued a final decision on October 1, upholding the recission on the basis that Plaintiff was ineligible for the Mainstream Voucher, per her own admissions.

Plaintiff brought suit in the Franklin County Common Pleas Court, appealing the final decision of CMHA[2] and raising a mix of federal and state claims against 16 defendants. Defendants removed the case to this Court on the basis of the federal claims.[3]

## STANDARD OF REVIEW

In evaluating a motion for a temporary restraining order ("TRO"), or preliminary injunction, the court considers "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to

[2] Under Ohio law, "every final order, adjudication, or decision of any… authority… may be reviewed by the court of common pleas." Ohio Rev. Code § 2506.01.

[3] Defendants also invoke diversity jurisdiction, as Plaintiff remains in Michigan while all Defendants are domiciled in Ohio. However, Plaintiff's Complaint does not plead an amount in controversy sufficient to satisfy diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* doc. 3.

others, and (4) whether the public interest would be served by granting the stay." *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "All four factors are not prerequisites but are interconnected considerations that must be balanced together." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006) (citing *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991)).

"The party seeking the preliminary injunction bears the burden of justifying such relief," including showing likelihood of success and irreparable harm. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

## DISCUSSION

### A. No Likelihood of Success on the Merits.

The injunctive relief that Plaintiff seeks is an immediate stay of the recission of her Mainstream Voucher. But Mainstream Vouchers are exclusively for disabled adults (*see* PIH Notice 2020-01), and Plaintiff has repeatedly pointed out that she is not disabled. She has not disputed that she is categorically ineligible for a Mainstream Voucher. Therefore, because Plaintiff has no likelihood of success on the merits of the claim which would entitle her to such relief, Plaintiff's motion must be denied.

Plaintiff's allegations of fraud and other improprieties do not alter this basic conclusion. For example, Plaintiff asserts a claim for Civil Liability for Forgery,

Defamation, and Child Endangerment pursuant to O.R.C. § 2307.60. She brings this claim against Solomon, Corey, Tony Collins, Nexus Chapman, Makayla Meachem, and YMCA of Central Ohio ("YMCA Defendants")[4], alleging that they "engaged in record tampering and forgery by generating a federal Medical Certificate of Disability, signing Plaintiff's electronic signature without authorization, and submitting the document to CMHA to alter her federal file." Doc. 3, # 40. She raises additional allegations regarding the YMCA Defendants failure to remediate toxic mold "for over a year." Doc. 3, # 40. Taking all this to be true, Plaintiff remains ineligible for a Mainstream Voucher.

Likewise, the allegations raised in Plaintiff's § 1983 claim for First Amendment retaliation are immaterial to whether she is entitled to Mainstream Voucher benefits. Plaintiff alleges the CMHA Defendants retaliated against her for "reporting voucher fraud, identity theft, and physical safety hazards to HUD, the FBI, and executive leadership." *Id.* at # 39. Nothing alleged bears on the issue of whether Plaintiff has shown a likelihood of success on the merits of her action to reverse CMHA's final determination of her ineligibility for the Mainstream Voucher program. The same is true for the rest of Plaintiff's claims, which range from derivative claims of vicarious liability to a variety of torts. *Id* at # 40-43.

---

[4] At this time, only CMHA-affiliated Defendants (CMHA, Charles Hillman, Christean Porter, Laticia Phinisee, Roslyn Nevel, Shari Hoosier, and Jeffery Lookabaugh, the "CMHA Defendants") have taken an active role in this case. The YMCA Defendants, the Community Shelter Board, Courtney White, and Eric Ortiz are all named Defendants who have not yet appeared.

In sum, Plaintiff can show no likelihood of success on the merits, a circumstance which is "usually fatal." *Gonzales*, 225 F.3d at 625.

**B. Remaining Preliminary Injunction Factors Do Not Change the Result.**

The third and fourth preliminary injunction factors do not weigh strongly in this analysis. As to the third factor, the record shows little in the way of argument or evidence in the record that others would be harmed by granting the relief sought, beyond the obvious inference that benefits provided to Plaintiff in spite of her ineligibility represent benefits that cannot be provided to a household that is actually eligible for a Mainstream Voucher. As to the fourth factor, on the other hand, the Court can similarly infer that the public interest is served by preventing homelessness, consistent with the overarching goal of housing assistance programs (though the Court would also infer that the public interest is served by distributing benefits properly in accordance with applicable eligibility rules).

The second factor, concerning the likelihood of irreparable injury absent an order granting the relief sought, is the strongest in Plaintiff's favor. She argues that without the assistance of the Mainstream Voucher, she is unable to pay rent and is at "immediate risk of catastrophic eviction." Doc. 4, # 46. She has submitted materials to the Court which show that her landlord has filed a "Demand for Possession" due to nonpayment of rent in Michigan state court.[5] *See* doc. 11.

[5] Though Plaintiff describes this as an "active eviction" action, the filing demands payment of rent or vacation of the premises, stating that if Plaintiff fails to take one of those actions, "your landlord/landlady may take you to court to evict you." Doc. 11, # 84.

But the irreparable injury inquiry must also account for the remedies available to the movant. *NCR Corp. v. Feltz*, 983 F.2d 1068 (6th Cir. 1993) ("Generally, an injunction should not issue if an adequate legal remedy exists."). Here, Plaintiff has unexhausted remedies available to avoid the irreparable harm she alleges. She can defend herself in the eviction proceedings.[6] She can seek other forms of housing assistance with the MSHDA and was placed back on the waiting list for benefits for which she may be eligible. Further, she has merely averred that her rent cannot be paid without the Mainstream Voucher but has not submitted evidence demonstrating an inability to pay. On the other hand, the Court's preliminary injunction powers cannot be used as a means of evading the consequences of adverse legal outcomes and should not be wielded in a manner that interferes with ongoing state proceedings. *See Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). In sum, while no likelihood of success on the merits provides reason enough to deny Plaintiff's motion, she has also not established that the remedies available to her are so inadequate as to require the extraordinary relief she seeks from this Court.

**CONCLUSION**

Because Plaintiff has no likelihood of success on the merits of her appeal of CMHA's decision to rescind her Mainstream Voucher, her motion for a temporary restraining order is hereby **DENIED**.

**IT IS SO ORDERED**.

s/ James L. Graham

[6] Plaintiff has also filed a countersuit against her landlord in Michigan.

JAMES L. GRAHAM
United States District Judge

DATE: November 2, 2026